IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. JAMES E. (JUNEBUG) LIGON

**Direct Appeal from the Circuit Court for Cheatham County**
**No. 12907      Allen W. Wallace, Judge**

_____

**No. M1999-02461-CCA-R3-CD - Filed January 12, 2001**

_____

A Cheatham County jury found the defendant guilty of aggravated burglary and theft for breaking into his neighbor's home and stealing two television sets, a VCR, and a computer. The trial court sentenced the defendant as a Range III, persistent offender to twelve years for the aggravated burglary count and as a career offender to twelve years for the theft count, with the sentences to be served consecutively in the Department of Correction. In this appeal as of right, the defendant challenges the sufficiency of the evidence; the failure of the trial court to order a mistrial based on testimony alluding to the defendant's criminal past; and the failure of the trial court to instruct the jury as to the crime of accessory after the fact on the theory that it is a lesser-included offense of both indicted offenses. Finding the evidence sufficient and no other reversible error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, J., joined. JOSEPH M. TIPTON, J., concurred in the result.

Gary M. Eisenberg, Pleasant View, Tennessee, for the appellant, James E. (Junebug) Ligon.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and James W. Kirby, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

A Cheatham County jury found the defendant, James E. (Junebug) Ligon, guilty of one count of aggravated burglary, a Class C felony, and one count of theft, a Class D felony. The trial court sentenced the defendant as a Range III, persistent offender to twelve years for the aggravated burglary count and as a career offender to twelve years for the theft count. The sentences were ordered to be served consecutively in the Tennessee Department of Correction. In this appeal as of right, the defendant raises the following issues for our review:

I.        Whether the evidence is sufficient to sustain the convictions;

II.       Whether testimony of the defendant's criminal record prejudiced the jury, requiring a mistrial; and

III.     Whether the trial court erred in failing to instruct the jury as to the offense of accessory after the fact, on the theory that it is a lesser-included offense of aggravated burglary and theft.

Having reviewed the entire record, we affirm the judgment of the trial court.

## FACTS

On the evening of Sunday, November 2, 1997, Clifford Bell, co-defendant, was at the home of the defendant's mother in Ashland City. Bell, just shy of twenty-three, had known the defendant for two or three years before the events surrounding this crime transpired. The Ligon home was next door to the home of the victim, Donna Davenport, and her three children. The defendant had been in the victim's home on many occasions. Bell did not know the victim and had never been in her home. On this particular evening, Bell, the defendant, and Nicole Dyer, a female friend of the defendant, left the Ligon home and drove around in Bell's car, drinking. Much later that evening, the three checked into the Day Stop Motel on White Bridge Road in Nashville, and Dyer paid for the room. Dyer testified that she and Bell both used crack cocaine that night.

The next morning, Monday, November 3, having no money, the defendant suggested that he and Bell drive back to Ashland City. Bell knew only that the defendant had "something" for him to do and that it involved a house. They drove to the Ligon house where Bell backed his car in along the side of the house. Bell waited in the car and watched as the defendant went into his house for a few minutes, came out, and then entered the victim's house through a door in the back. The defendant was inside the victim's home some five minutes before he emerged carrying a television. The defendant made two or three more trips, bringing out a VCR, another television, and a computer. Bell never entered the victim's home, but he did load the stolen items into his car. Bell admitted that he knew he was involved in a crime.

With the stolen items now in Bell's car, the two drove back to Nashville where the defendant had a friend who worked in a pawn shop. The friend, Timothy Burkes, had worked at Main Street Trade for two years, and he and the defendant were "like brothers." The defendant called Burkes to see if he would be interested in buying some "stuff." The defendant also told Burkes not to discuss price in front of Bell because the defendant was "trying to make money off of Mr. Bell." The transaction at the pawn shop was recorded by a surveillance camera, and the tape was made part of

the evidence.[1] Burkes testified that there was no doubt that it was the defendant and Bell on the tape who brought the victim's two television sets and VCR into the pawn shop to sell. Burkes paid the defendant $60 for each of the television sets and $20 for the VCR. Burkes was unwilling to purchase the computer, so it remained in Bell's car. The defendant gave Bell $10, apparently for gas, but told Bell that he would get more money later. The two then drove to pick up Dyer at the Day Stop Motel where she had been "thrown out" of the room and was waiting for Bell and the defendant to return for her. Bell then dropped the defendant and Dyer off at the Super 8 Motel on Charlotte in Nashville.[2] The proceeds of the sale of the stolen items apparently financed this second motel stay. Bell, with the computer still in the backseat of his car, drove first to Portland, Tennessee, to see a girlfriend and then returned the next morning, November 4, to his residence in Ashland City.

At about the time Bell was dropping the defendant and Dyer off at the Super 8 Motel on the afternoon of November 3, nineteen-year-old Carl Gilbert, the son of the victim, was returning home from school. On this particular afternoon, he noticed first that an IBM computer was missing from his sister's room. He then noticed that the television was missing from the living room. Upon checking his own downstairs bedroom, he discovered that the television and VCR were missing. Gilbert then called the Ashland City Police Department. Officer Ray Morris responded to the call within approximately ten minutes.

Officer Morris, a twenty-eight-year veteran of law enforcement, testified that there were signs of forced entry at a basement door. It looked to him as if the door had been pried open with a screwdriver or some similar object. Officer Marc Coulon, an investigator with the Ashland City Police Department and also a twenty-eight-year veteran of law enforcement, soon joined Officer Morris at the scene. Officer Coulon found no discernable fingerprints.

The next morning, Tuesday, November 4, Officer Coulon received an anonymous call from someone who claimed to have seen two individuals at the back of the victim's house the day before. The individuals named were the defendant and Clifford Bell. Coulon then determined the type of car Bell drove, which was a red Chrysler LeBaron convertible, and located it at Bell's residence in Ashland City. In approaching the residence later the same day, Officer Dave Branson walked by the car and saw a computer system on the backseat.[3] Both Bell and the car were then brought to the police department. Bell decided to tell Coulon the truth about the break-in, including the location of the pawn shop where the other stolen items could be found. The two televisions and the VCR

---

[1]None of the exhibits, including this videotape, were included in the record before this court. As to the date of the transaction at the pawn shop, it was clearly the same day as the crime itself and not the next day, November 4, as the State incorrectly stated when questioning Burkes.

[2]Dyer testified that she and the defendant checked into the Super 8 Motel at 8:00 a.m. on the day of the crime, Monday, November 3. This is inconsistent with her testimony that she was "thrown out" of the Day Stop Motel on the day of the crime because Bell and the defendant had not "got back to pick me up on time." According to Bell, it was 2:00 or 3:00 p.m. on the day of the break-in when he left the defendant and Dyer at the Super 8 Motel.

[3]The computer found in Bell's convertible was later identified and reclaimed by the victim.

were recovered the same day from the pawn shop run by Timothy Burkes. The items were subsequently positively identified by the victim and returned to her.

## ANALYSIS

### Issue I. Sufficiency of the Evidence

The defendant argues that the evidence is insufficient to convict him of either aggravated burglary or theft. In his defense, the defendant asserts that he was never at the scene of the break-in and that his co-defendant, Clifford Bell, committed the crimes on his own. The defendant claims that he was involved only to the extent that he went with Bell to help get the items pawned and that he did not know the items were stolen.

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based on direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. See State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the convicting evidence, this court does not reweigh or reevaluate the evidence. See State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this court substitute its own inferences for those drawn by the trier of fact from circumstantial evidence. See Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). On the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that may be drawn from the evidence. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. See id. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Because the guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the accused, in choosing to challenge the sufficiency of the convicting evidence, has the burden of illustrating in this court why the evidence is insufficient to support the verdicts returned by the trier of fact. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt because of the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. See id.

Before an accused can be convicted of aggravated burglary and theft, as charged in the indictment, the State must prove the following, beyond a reasonable doubt, according to Tennessee's statutory scheme:

-4-

> **Aggravated burglary.** — (a) Aggravated burglary is burglary of a habitation as defined in §§ 39-14-401 and 39-14-402.

Tenn. Code Ann. § 39-14-403.

> **Definitions for burglary and related offenses.** — As used in this part, unless the context otherwise requires:
>
> (1) "Habitation":
>
> (A) Means any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons[.]

Tenn. Code Ann. § 39-14-401(1)(A).

> **Burglary.** — (a) A person commits burglary who, without the effective consent of the property owner:
>
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault[.]

Tenn. Code Ann. § 39-14-402(a)(1).

> **Theft of property.** — A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent.

Tenn. Code Ann. § 39-14-103. Therefore, here, the State had the burden of proving that the defendant knowingly entered a habitation without the owner's consent, when the habitation was not open to the public, and, when entrance to the habitation was made, with the intent to commit a theft, that is, to deprive the owner of property by obtaining control over the property without the owner's consent.

In this case, the evidence established that the defendant, Clifford Bell, and Nicole Dyer spent the night of November 2, 1997, at a Nashville motel before the morning of the break-in. Testimony was that cocaine was available in the room and used by at least Bell and Dyer and that by morning, the group was out of money. The defendant proposed that he and Bell drive back to Ashland City because the defendant had a plan that involved a house. The house turned out to be the Davenport home, right next door to the defendant's home.

The defense presented two witnesses who apparently were asleep in the defendant's home on the morning of the crime to show that Bell arrived in his car alone. One witness, Devonnie Greer, a friend of the defendant's younger brother, Jay, had been with the defendant at the motel room the evening before in Nashville before returning to the Ligon home in Ashland City, where a party with friends lasted until the early morning hours of November 3, the crime date. Greer testified to the following on cross-examination by the State:

Q. What time would you say that it was you went to sleep that night, the night of the 2nd?

A. That night?

Q. Yes.

A. It was pretty late, probably about - - probably somewhere around 3:30 to 4:00, something like that.

Q. Well let's say you went to sleep between 3:00 and 3:30, you got up, you said about noon the next day; is that right?

A. Yes, sir.

Q. So from 3:30 to noon, you don't have a clue what happened, do you?

A. Basically not really.

The defendant's older brother, Jeremiah, testified that he also spent the night of November 2 at the Ligon family home. He testified that he saw Clifford Bell's car in the drive the next morning but that he went right back to sleep. He did not know who was in the car because all he saw was just the car. Jeremiah Ligon was incarcerated for aggravated robbery at the time of the defendant's trial.

Finally, Nicole Dyer testified that it was Bell who left the motel room in the early hours of November 3 and returned with the two television sets, the VCR, and the computer, all of which she could see from her vantage point inside the motel room doorway. The defendant left with Bell to help him pawn the items, which Dyer testified she and the defendant did not know were stolen. Dyer was currently in jail for violating probation based on a conviction for forging checks.

The jury acted within its prerogative when it disbelieved defense witnesses and instead believed, among other evidence: (1) the testimony of Bell, who had no felony criminal record, admitting that he sat in the car while the defendant broke into the victim's home and then loaded the stolen items into his car; (2) the evidence of the surveillance videotape from the pawn shop showing the two men carrying the stolen items into the shop; (3) the testimony of Timothy Burkes indicating

that the defendant was orchestrating the transaction and took the money for the items; and (4) the testimony of the victim's son, Carl Gilbert, indicating that the defendant was familiar with their home. These facts were sufficient to find the defendant guilty of the offenses of aggravated burglary and theft. This issue is without merit.

## Issue II. Prejudicial Testimony Requiring a Mistrial

As his second issue, the defendant claims that the following two segments of testimony were so prejudicial to him that the trial judge erred in not calling a mistrial. The first segment occurred during the cross-examination of the defense witness, Nicole Dyer:

> Q. How long had you known James Ligon?
>
> A. Ever since he had been let out on parole, about a year and a half, a little over.
>
> Q. So you knew him - - you're talking about a year and a half from today?
>
> A. He got out on parole and - - yeah, I guess. Yeah, almost two years now. I guess today - - if I'm looking at it today, about two years I guess, maybe.

The second segment that the defendant points to as requiring a mistrial is the following exchange between the State and the victim, Ms. Davenport, on direct rebuttal examination, concerning telephone calls that were made by Nicole Dyer to the Davenport home subsequent to the defendant's arrest:

> Q. And what was the tenor of the conversation between you and her at that time?
>
> A. She said that she was with Junebug, that he didn't do it and that she wanted us to drop the charges because he'd been in some trouble before.

These responses, "out on parole" and "been in some trouble before," occurred without contemporaneous objection from the defendant or motion for a mistrial. Relief is not available to a party who fails to "take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). The defendant's failure to make contemporaneous objection or motion for mistrial constitutes a waiver of this issue absent plain error. Plain error in this context is error that appellate courts may address "where necessary to do substantial justice." Tenn. R. Crim. P. 52(b). However, based upon the record, we cannot conclude that "plain error"

occurred.  See State v. Smith, 24 S.W.3d 274, 282-84 (Tenn. 2000).   We conclude that this issue is waived.

## Issue III.  Failure to Instruct on Accessory After the Fact as Lesser-Included Offense

Finally, the defendant asserts that the trial court erred by failing to instruct the jury as to the crime of accessory after the fact when charging the jury on aggravated burglary and theft, on the theory that accessory after the fact is a lesser-included offense of both indicted offenses.  The following definition of lesser-included offenses was adopted by our supreme court in State v. Burns, 6 S.W.3d 453, 466-67 (Tenn. 1999):

> An offense is a lesser-included offense if:
>
> (a)  all of its statutory elements are included within the statutory elements of the offense charged; or
>
> (b)  it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing:
>
> > (1)  a different mental state indicating a lesser kind of culpability; and/or
> >
> > (2)  a less serious harm or risk of harm to the same person, property or public interest; or
>
> (c)  it consists of
>
> > (1)  facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> >
> > (2)  an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b); or
> >
> > (3)  solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

Accessory after the fact is defined in Tennessee Code Annotated Section 39-11-411(a) in the following way:

**Accessory after the fact.** — (a) A person is an accessory after the fact who, after the commission of a felony, with knowledge or reasonable ground to believe that the offender has committed the felony, and with the intent to hinder the arrest, trial, conviction or punishment of the offender:

    (1) Harbors or conceals the offender;

    (2) Provides or aids in providing the offender with any means of avoiding arrest, trial, conviction or punishment; or

    (3) Warns the offender of impending apprehension or discovery.

Accessory after the fact fails to meet the definition of a lesser-included offense of either aggravated burglary or theft according to the Burns analysis. This determination is consistent with State v. Eric P. Myers, No. 03C01-9311-CR-00376, 1996 WL 26243, at *1 (Tenn. Crim. App. Jan. 23, 1996), perm. app. denied (Tenn. July 22, 1996), where this court concluded that "the crime of being an accessory after the fact . . . is not an included offense within charges of aggravated burglary and theft." The Burns paradigm for lesser-included offenses supports this earlier determination. Its statutory elements are not included in the statutory elements of either aggravated burglary or theft. It does not fail to meet this requirement only because the statutory elements of accessory after the fact contain either an element establishing a different mental state indicating a lesser kind of culpability or establishing a less serious risk of harm to the same person, property, or public interest. Furthermore, accessory after the fact does not consist of facilitation, attempt to commit, or solicitation of aggravated burglary or theft or of an offense that otherwise meets the definition of a lesser-included offense of either aggravated burglary or theft. The trial court did not err in failing to instruct the jury on accessory after the fact.

## CONCLUSION

We conclude that the evidence was sufficient to convict the defendant of aggravated burglary and theft; that no testimony alluding to his criminal past unfairly prejudiced the defendant; and that no instruction on the crime of accessory after the fact was required. The judgment of the trial court is affirmed.

 

                                        _____

                                        ALAN E. GLENN, JUDGE